Robert William CRAWFORD, Petitioner-Appellant,

v.

William H. BANNAN, Warden, State Prison of Southern Michigan, Respondent-Appellee.

No. 15526.

United States Court of Appeals
Sixth Circuit.

Sept. 17, 1964.

Gary L. Schneider, Cincinnati, Ohio (Court appointed), for appellant.

James R. Ramsey, Asst. Atty. Gen., Lansing, Mich. (Frank J. Kelley, Atty. Gen., Robert A. Derengoski, Sol. Gen., Lansing, Mich., on the brief), for appellee.

Before WEICK, Chief Judge, and O'SULLIVAN and PHILLIPS, Circuit Judges.

O'SULLIVAN, Circuit Judge.

This appeal follows denial of the petition of Robert William Crawford for habeas corpus relief from a sentence imposed following his 1957 conviction of armed robbery in the Circuit Court for Kalamazoo County, Michigan. There is no contention that he has not exhausted the remedies available to him in the Michigan courts,[1] so this Court is free to enter a judgment on the merits which may or may not conclude his "multitude of applications to the courts."

Petitioner's application to the United States District Court at Detroit, expanded in his addresses to this Court, sets forth a long list of claimed errors in his Michigan trial and asserts invasion of his federal constitutional rights. The District Judge appointed counsel to aid Crawford in prosecuting his habeas corpus application and conducted an extensive hearing. Crawford was present and took an active part in the conduct of such hearing, a full transcript of which is presently before us.

The District Judge supported his denial of Crawford's petition with an opinion which fully discusses and correctly disposes of petitioner's contentions. The only constitutional question we need discuss here is raised by Crawford's assertion that evidence introduced at his trial had been obtained by an illegal search of his automobile. Since the District Court order was entered, the United States Supreme Court in Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777, reversed this Court's decision in United States v. Sykes, 6 Cir., 305 F.2d 172 (1962). There we had sustained as legal the search of an automobile made after the accused had been arrested and the vehicle had been taken to the police station and then towed to a garage. The search disclosed loaded

1. On September 7, 1962, the Michigan Supreme Court denied Crawford's motion for reconsideration of its order denying him leave to appeal.

revolvers and extensive paraphernalia used in convicting Preston of conspiracy to commit a bank robbery. Appellant urges that Preston requires reversal of the District Court and the setting aside of his 1957 conviction.

The facts found by the District Judge from testimony taken at the hearing were recited by him as follows:

"At 8:00 P.M. approximately, on April 14, 1957, the Police Department of Toledo, Ohio, received a radio communication from the Police Department in Kalamazoo, Michigan, informing them that a Robert William Crawford was wanted for armed robbery and that a warrant would be issued for his arrest. The suspect was described as a white male, 31 years of age, 5 feet 8 inches tall, weighing 170 pounds, having black hair, and driving a green and cream 1951 Buick hardtop, which had Michigan license number HB 3445. The communication noted: 'Subject armed and dangerous, may go to 702½ or 907 Jefferson, Toledo.' At 9:00 P.M. approximately, the car described was sighted, and two officers of the Toledo Police Department (Lieutenant Zeitler and Sergeant Stoll) took a position where they could watch for the suspect. At 10:-00 P.M. approximately, a person answering the description of the suspect was seen to go to the door of the car and open it and then go to the trunk and open the trunk. The officers placed the person who had approached the car under arrest. It was the petitioner. At first he said that his name was Robert Johnson, but upon being confronted with cards found in searching him which identified him as Robert William Crawford, he admitted his true identity. The keys to the car were taken from him, and he was removed in a patrol wagon. The officers then un-

locked the car and seized a .22 caliber Harrington & Richards revolver from the glove compartment and some clothes from the trunk. The revolver and the clothes were introduced in evidence for the prosecution. The petitioner, who insisted upon conducting his own defense, objected to the clothes and, possibly, the revolver."

The District Judge, in sustaining the validity of the search, said "the search of the car was substantially contemporaneous with the petitioner's arrest, and, while the officers might have impounded the car until a search warrant was obtained, searches under similar circumstances have been held lawful. See Fraker v. United States [9 Cir.], 294 F(2) 859; Bartlett v. United States, [5 Cir.], 232 F(2) 135; United States v. Fortier [D.C.], 207 F.Supp. 516." The District Judge further supported the quoted statement by reference to our decision in United States v. Sykes, supra, now reversed by Preston.

The narrow question we consider is whether the fact that the search here was made *after* Crawford was taken away in the patrol wagon [2] renders it illegal under Preston. We do not so read this latest Supreme Court exposition of the difficult subject of search and seizure. We are of the opinion that the search under attack here was valid, as *incidental to and contemporaneous with* the arrest of Crawford. In Preston, the Court said that when a person is lawfully arrested "the police have the right, without a search warrant, to make a *contemporaneous search* of the person of the accused for weapons or for the fruits of or implements used to commit the crime. * * * This right to search and seizure without a search warrant extends to things under the accused's immediate control * * * and, to an extent depending on the circumstances of the case, to the place where he is arrested." 376

2. One of the arresting officers testified at the state trial "It was a few minutes after he (Crawford) was sent in by patrol wagon that we searched the car." The car had not been moved.

U.S. 367, 84 S.Ct. 883. (Emphasis supplied.) Mr. Justice Black gave *as examples* of circumstances which justify a contemporaneous and *on the spot* search without warrant "the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as * * * the need to prevent the destruction of evidence of the crime—things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control. But these justifications are absent where a search *is remote in time or place from the arrest.*" Ibid. (Emphasis supplied.) Were these examples intended to exhaust the list of possible justifications, it would be easy to dispose of the present case. After Crawford had been taken away in the patrol wagon, he was no longer a danger to the officers, nor were the contents of his vehicle, in police custody, exposed to destruction or removal. As the District Judge found, "the officers might have impounded the car until a search warrant was obtained." Must, then, Preston be read as holding that any search without a warrant, *incident to and substantially contemporaneous with* an arrest, is illegal if at the time neither the arresting officers nor the evidence of the crime would be endangered by taking the steps necessary to obtain a search warrant? We do not believe that Preston commands such a holding.

Preston did not overrule, but cited as existing authority, the case of United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950), which we believe confirms the legality of the search here discussed. In Rabinowitz the Supreme Court stated "Assuming that the officers had time to procure a search warrant, were they bound to do so? We think not, because the search was otherwise reasonable * * *." 339 U.S. 64, 70 S.Ct. 434, 94 L.Ed. 659. In our view, the conduct of the Toledo officers in this case was "otherwise reasonable." It is not necessary for us to add to the full discussion and citation of relevant authorities contained in Rabinowitz. We believe that Rabinowitz controls our decision and sustains the validity of the search that was made of Crawford's vehicle. We so hold. We do not consider that the fact that Crawford had left the scene when his automobile was searched prevented such search from being incidental to his arrest.

We have considered the other and numerous claims by Crawford that his constitutional rights were invaded, centering primarily around his claim that he did not have a fair trial in the Circuit Court of Kalamazoo County, Michigan. We find no merit in them.

It may appropriately be observed that the District Court judgment now under review is but the latest denial of relief to appellant. Innumerable applications for relief have been made to the sentencing court. To the extent that our search of a highly confused record discloses, the Supreme Court of Michigan has three times considered and disposed of Crawford's claims. The Supreme Court of the United States has twice denied certiorari to review such action by the Michigan Court.[3] Some six applications for habeas corpus relief have been denied in the United States District Court at Detroit, five different judges of that court having considered appellant's charges. Twice this Court has denied applications for certificates of probable cause, and the United States Supreme Court has denied certiorari to review such actions by this Court. We also have denied applications of Crawford for writs of habeas corpus, mandamus, and prohibition. The order before us followed a rehearing granted pursuant to a delayed motion in the sixth habeas corpus action.

Our decision that the search in the present case was not unconstitutional

---

3. Crawford has also employed the circumstances of his arrest as grounds for civil rights actions. Crawford v. Zeitler, 326 F.2d 119 (CA 6, 1964); Crawford v. Lydick, 179 F.Supp. 211 (W.D.Mich. 1959), affirmed, 280 F.2d 426 (CA 6, 1960), cert denied, 364 U.S. 849, 81 S. Ct. 93, 5 L.Ed.2d 72 (1960).

**508**

prevents us from reaching the question whether the rule of Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), should be retroactively appplied to a judgment of conviction final when Mapp was announced. Compare United States ex rel. Angelet v. Fay, 333 F.2d 12 (CA 2, 1964); Sisk v. Lane, 331 F.2d 235 (CA 7, 1964); United States ex rel. Linkletter v. Walker, 323 F.2d 11 (CA 5, 1963), cert. granted, 377 U.S. 930, 84 S.Ct. 1340, 12 L.Ed. 295 (1964); and Gaitan v. United States, 317 F.2d 494 (CA 10, 1963), with California v. Hurst, 325 F.2d 891 (CA 9, 1963), petition for cert. filed, 32 U.S.L. Week 3360 (U.S. March 13, 1964) (No. 913, renumbered No. 45, October Term, 1964); Hall v. Warden, 313 F.2d 483 (CA 4, 1963), cert. denied, 374 U.S. 809, 83 S.Ct. 1693, 10 L.Ed.2d 1032 (1963). See also United States ex rel. Campbell v. Rundle, 327 F.2d 153 (CA 3, 1964).

Judgment affirmed.