James H. **BOWLING**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 18693.

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 16, 1965.

Decided June 24, 1965.

Mr. Milton M. Gottesman (appointed by this court), Washington, D. C., for appellant.

Mr. Robert E. Jordan, III, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., Frank Q. Nebeker and Joseph A. Lowther, Asst. U. S. Attys., were on the brief, for appellee.

Mr. Daniel J. McTague, Asst. U. S. Atty., also entered an appearance for appellee.

Before EDGERTON, Senior Circuit Judge, and WASHINGTON and McGOWAN, Circuit Judges.

EDGERTON, Senior Circuit Judge:

Appellant was convicted of robbing a Truxton Esso Service Station in the District of Columbia on February 26, 1963. A revolver which the prosecution obtained from Virginia police was admitted in evidence at the trial.

A few hours after the Truxton robbery Virginia police stopped a car in which appellant and two other men were riding, on suspicion that one or more of them had robbed a Heischman Service Station in Virginia. Immediate search produced two revolvers, but these were not put in evidence at the trial. The revolver that was put in evidence was found in the car after the police had taken the car and its occupants to the Heischman Service Station, some miles away, and renewed the search there.

The government does not contend that the police had probable cause, when they stopped the car, to believe that anyone in it had committed a felony. But the government contends that "momentary detention for the purpose of examining a driver's license and registration, pursuant to state law, is not an arrest." A Virginia statute purports to require the operator of any car to stop on a policeman's signal and, on request, show his registration card and driver's permit and identify himself by signing his name. Rios v. United States, 364 U.S. 253, 262, 80 S.Ct. 1431, 1437, 4 L.Ed.2d 1688

(1960), implies that if the police approached a *standing* car "only for the purpose of routine interrogation, and * * * had no intent to detain the petitioner beyond the momentary requirements of such a mission", it would not be an arrest.

■ But no such question is involved here. The police stopped a moving car, and did so not for the purpose of "routine" interrogation but for the purpose of investigating a suspected connection between occupants of the car and a felony. This was an unlawful "arrest for investigation." *Cf.* Gatlin v. United States, 117 U.S.App.D.C. 123, 127–28, 326 F.2d 666, 670–71 (1963). In Henry v. United States, the prosecution conceded and the Supreme Court held that "the arrest took place when the federal agents stopped the car. * * * When the officers interrupted the two men and restricted their liberty of movement, the arrest, for purposes of this case, was complete." 361 U.S. 98, 103, 80 S.Ct. 168, 171, 4 L.Ed.2d 134 (1959). It is "sufficient if the party arrested is *within the power of the officer and submits to arrest * * *.*" Coleman v. United States, 111 U.S.App.D.C. 210, 218, 295 F.2d 555, 563 (1961) (In banc. Emphasis in original.).

The government mistakenly relies on Ellis v. United States, 105 U.S.App.D.C. 86, 264 F.2d 372, cert. denied, 359 U.S. 998, 79 S.Ct. 1129, 3 L.Ed.2d 986 (1959). There this court held a pedestrian's behavior when "confronted" by the police, together with what the police already knew, "justified his apprehension", i. e. gave probable cause for his arrest. The court thought the man's "apprehension", his restraint, did not occur until the police had probable cause to arrest him.[1]

■■ Since the arrest which led to the search and the government's possession of Bowling's revolver was made without either probable cause or a warrant, the search was illegal. Therefore the revolver should not have been admitted in evidence.

■ It should not have been admitted in evidence for an additional and independent reason. "Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest. Agnello v. United States, *supra,* 269 U.S., [20] at 31 [46 S.Ct. 4, at 5, 70 L.Ed. 145]." Preston v. United States, 376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777 (1964), reversing United States v. Sykes, 305 F.2d 172 (6th Cir. 1962). No search was so made in Price v. United States, 121 U.S.App.D.C. ——, 348 F.2d 68 (decided June 10, 1965).

Reversed.

WASHINGTON, Circuit Judge (concurring in the result):

I agree with Judge EDGERTON that appellant's conviction must be reversed because of the admission of illegally seized evidence which should have been excluded under Preston v. United States, 376 U.S. 364, 84 S.Ct. 881 (1964). The *Preston* opinion sets out the policies which justify a departure from the usual warrant requirement when a search is made as an incident to an arrest:

"The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime— things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control. But these justifications are absent where a search is remote in time or place from the arrest. Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest. Agnello v. United States, *supra,* 269 U.S., at 31 [46 S.Ct. 4,

---

1. I dissented because I disagreed with the majority of the court as to when restraint began and when the police had probable cause.

at 5, 70 L.Ed. 145]." 376 U.S. at 367, 84 S.Ct. at 883.[1]

The Court held the search unreasonable because the search was "too remote in time or place" from the arrest. 376 U.S. at 368, 84 S.Ct. at 884. At the time of the search, "there was no danger that any of the men arrested could have used any weapons in the car or could have destroyed any evidence of the crime" and there was no "danger that the car would be moved out of the locality or jurisdiction." 376 U.S. at 368, 84 S.Ct. at 883. The same is true of the instant case. The appellant and his associates had been arrested and taken to another place. They had no access to the car, which was also in police custody. It is true that appellant was present at the time of the search, and defendant in *Preston* was not. But I attach no significance to that difference.[2]

I appreciate the facts that the *Preston* opinion is somewhat ambiguous and that the policy justifications for a search pursuant to an arrest stated in *Preston* are difficult to reconcile with older Supreme Court decisions.[3] But the *Preston* case has recently been quoted at length by the Court as setting forth the scope of permissible search incident to a lawful arrest. United States v. Ventresca, 380 U.S. 102, at 107 n. 2, 85 S.Ct. 741, at 745 n. 2, 13 L.Ed.2d 684, at 688 n. 2 (1965). In the light of this reaffirmation of the *Preston* reasoning, we are unwilling to give the case the narrow reading urged by the Government.[4]

I do not think it necessary for us to reach the vexatious questions of whether stopping a moving car always constitutes an "arrest," and whether the Virginia statute was properly invoked or fairly interpreted by the police in this case. Accordingly, I express no view on those questions.

McGOWAN, Circuit Judge (dissenting):

With all respect, I am not persuaded that there was, on this record, any serious question as to the validity of the arrest. The problem, then, is one of whether Preston v. United States, 376 U.S. 364, 84 S.Ct. 881 (1964), compels reversal because, in the Supreme Court's words in that case, "the search was too remote in time or place to have been

---

1. See also United States v. Rabinowitz, 339 U.S. 56, 72, 70 S.Ct. 430, 437, 94 L. Ed. 653, 663 (dissent, Frankfurter, J.). *Cf.* Price v. United States, 121 U.S.App. D.C. ——, 348 F.2d 68, cert. denied, 86 S.Ct. 170 (1965).

2. The closest Court of Appeals case to the case at bar that we have found is Crawford v. Bannan, 336 F.2d 505 (6th Cir. 1964), in which the admission of evidence seized in similar circumstances was sustained. In *Crawford* the defendant was not present at the time of the search. I do not think that the factual differences between the two cases justify distinguishing them; with due respect to the Sixth Circuit, I disagree with the result therein. Compare United States v. Cain, 332 F.2d 999 (6th Cir. 1964); United States v. Herberg, 15 U.S.C.M.A. 247, 35 C.M.R. 219 (1965).

3. See, *e. g.,* Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947). In that case appellant was lawfully arrested and handcuffed in his living room. FBI agents then searched his entire apartment for five hours without a warrant. The Supreme Court held that this search was reasonable.

This court has stated explicitly that searches of the kind made in this case are illegal. In Smith v. United States, 118 U. S.App.D.C. 235, 238, 335 F.2d 270, 273 (1964), we said:

"Even before the recent case of Preston v. United States, 376 U.S. 364, 84 S. Ct. 881 (1964), it was clear that a warrantless search of a car in police custody at a time after the occupants' arrest and under circumstances where there is no danger of removal is illegal. Rent v. United States, 209 F.2d 893 (5th Cir. 1954); Shurman v. United States, 219 F.2d 282 (5th Cir. 1955); Millette v. State, 167 Miss. 172, 148 So. 788 (1933). The Supreme Court's holding to the same effect in *Preston* puts the matter to rest."

4. *Cf.* Sisk v. Lane, 331 F.2d 235, 239 (7th Cir. 1964). See Adams v. United States, 118 U.S.App.D.C. 364, 336 F.2d 752 (1964), where we declined to apply *Preston* because the search was strictly contemporaneous to the arrest.

made as incidental to the arrest * *." I believe not.

*Preston,* it has always seemed to me, is to be read in the light of the central fact that the arrest made there was for vagrancy. It was only after (1) the arrestees had been fruitlessly questioned for some time at the police station, (2) the car had been placed in a garage, and (3) an officer sent to examine it had come back with two loaded revolvers found in the glove compartment, that police were dispatched to the garage with instructions to break into the trunk of the car. It was what was found there that connected the arrestees with the crime of which they were convicted—conspiracy to commit a bank robbery. Thus, the search in *Preston* was used to convict persons arrested for vagrancy, not of having robbed a bank but of intending to do so in the future. It may well be that this all evokes disquieting echoes of what the framers of the Fourth Amendment had in mind, and that the Supreme Court was right in requiring a greater degree of circumspection in the use of search warrants in these circumstances, although the essential rationale of the holding impresses me as lying much deeper than what the Court had to say about the dangers of escape or of assault with concealed weapons. In Adams v. United States, 118 U.S.App.D.C. 364, 336 F.2d 752 (1964), cert. denied, 379 U.S. 977 (1965), we looked to what was done in *Preston* rather than to what was said, and we upheld a warrantless search presenting neither such danger. See also Price v. United States, No. 18,901, decided June 10, 1965. I think we should do so here because, on the facts of this record, I do not think the search was so remote in either time or place from the arrest as to be invalid.

As the Supreme Court also said in *Preston,* "even in the case of motorcars, the test still is, was the search unreasonable." With the one overriding danger about which the Supreme Court was really concerned in *Preston* wholly absent here, I would have thought the answer to be clear on these facts. The authors of the Fourth Amendment have been spared the ordeal of living in a highly motorized 20th Century, but they, as men not given to ordering the affairs of life by absolutes, would surely have recognized some of its practical necessities.

I would affirm.