**UNITED STATES of America,
Plaintiff,**

**v.**

**Richard Anthony BORSELLA, Defendant.**

**Crim. A. No. 23053–3.**

United States District Court,
W. D. Missouri, W. D.

May 21, 1970.

William A. Kitchen, Asst. U. S. Atty., Kansas City, Mo., for plaintiff.

Ronald Sokol, Kansas City, Mo., for defendant.

## ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

WILLIAM H. BECKER, Chief Judge.

By an indictment returned on February 27, 1970, defendant was charged with a violation of Section 659, Title 18, United States Code, in that he allegedly "unlawfully, wilfully, and knowingly, and with intent to convert to his own use, did embezzle, steal, take and carry away from the Air Terminal Depot of Emery Air Freight located at 413 Holland Drive, Kansas City, Missouri, chattels of a value in excess of $100.00, to-wit, 45 wooden trays which were moving as, were part of, and constituted an interstate shipment of freight."

On March 25, 1970, defendant filed his motion to "suppress all evidence tainted by the illegal arrest of defendant and the illegal search of his automobile as well as all statements of defendant taken as a result of said illegal arrest, search and seizure."

A hearing was held on the motion to suppress on April 29, 1970, and the evidence showed the following facts.

The air terminal where the defendant was employed had, on several occasions, lost air freight between Saturday night and Monday morning. The defendant was suspected in this matter because of his coming to work late on Saturday morning, then staying late into Saturday evening so that he would be alone in the warehouse of the terminal for some time after the other employees had departed. When late to work defendant remained after others left, ostensibly to work a full eight-hour day. Agents of the Federal Bureau of Investigation were observing the freight terminal from a distance on February 7, 1970. Special Agent McArdle had been advised by a reliable source, Mr. Seymour Clair, District Manager of Emery Air Freight, that there had been numerous disappearances of freight from the warehouse between closing on Saturday evening and opening on Monday morning. Mr. Clair had further informed them that defendant had worked late on Saturdays preceding the discovery of loss of freight on Monday morning; that defendant was not authorized to remove articles from the warehouse; and that defendant was suspected of the earlier thefts while he was alone in the warehouse working late on Saturday evenings. The agents decided to watch the terminal on February 7, 1970 after the end of the eight-hour day. From a distance of about 150 feet from the air terminal the agents saw defendant come out of the terminal with a small box, which he placed in the front seat of defendant's automobile. Then he paused, looked at the trunk, but did not open it. Then he drove the automobile alongside the warehouse, took another parcel from the warehouse, placed it in the trunk and locked the trunk. The agents then followed defendant and observed him to drive his automobile from the airport across Broadway Bridge, to the vicinity of 6th and Broadway, where they placed defendant under arrest.

It is undisputed that the search and seizure was without a warrant. Generally, warrantless searches are un-

reasonable under the Fourth Amendment unless the search is within an exception to the warrant requirement. Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930; *See* v. City of Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943; Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed. 2d 856; Jones v. United States, 357 U.S. 493, 78 S.Ct. 1253, 2 L.Ed.2d 1514. One exception is a search incident to a lawful arrest. Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652; Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685, and cases therein cited. The arrest must be lawful under the authority giving the officer power to arrest (United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210) and it must be based upon "probable cause." Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879; Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917.

 The first question presented is thus whether the arrest of defendant was valid in the circumstances noted above. Generally, an officer may make an arrest if the officer has probable cause to believe that a felony is being committed in his presence. United States v. Rabinowitz, 339 U.S. 56, 70 S. Ct. 430, 94 L.Ed. 653. As noted above, in the case at bar, the FBI agents who made the arrest had received reliable information from the shipper that articles were disappearing between Saturday night and Monday morning; that defendant remained at least an hour later on Saturday night than the other terminal employees; and that he was not authorized to remove freight from the terminal. Further, the agents witnessed the acts described during the time when defendant removed parcels from the terminal, placed them in his automobile, and then drove across the Broadway Bridge to a distance and at a direction which would have been inconsistent with any possible claim of his intention to deliver them to another terminal. Clearly,

the agents who made the arrest in this case had probable cause to believe that a felonious theft from an interstate shipment had been committed in their presence and sight and that defendant was the person who had committed it. Therefore, the arrest of defendant was valid under the applicable law. See Section 3052, Title 18, United States Code.

Defendant, in opposition to this conclusion, relies on the case of Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134. In that case, Henry was arrested by FBI agents after there had been a theft of whiskey from an interstate shipment. Henry, in the company of one Pierotti, was arrested by the agents after being observed at a distance of some 300 feet driving away from a tavern with some cartons in an automobile. In that case, as distinguished from the case at bar, there had been no information given to the agents to form a basis for a reasonable belief that a felony had been committed and that Henry and Pierotti had committed it. As the Supreme Court opinion noted of the facts in that case:

> "The agents had been given, by the employer of Pierotti, information of an undisclosed nature 'concerning the implication of the defendant Pierotti with interstate shipments.' But, so far as the record shows, he never went so far as to tell the agents he suspected Pierotti of any such thefts." 80 S.Ct. at 169, 4 L.Ed.2d at 137.

Further, in the *Henry* case, the agents had no way of identifying the source of the cartons. In the case at bar, the arresting agents witnessed the taking of parcels from the air terminal and had been informed of the facts and circumstances leading to the belief that defendant was believed to be engaged in recurring thefts at the terminal.

Defendant further contends that, even if the arrest is presumed to be lawful, the standard of "probable cause" for a warrantless search is higher than that

for searches under a warrant. In this respect, defendant relies chiefly on the holdings in Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777, and Chimel v. California, *supra,* to the general effect that a warrantless search incident to an arrest extends only to things under the accused's immediate control. But in both *Preston* and *Chimel,* the reasonableness of a search and seizure to prevent the destruction of evidence which might be in a movable automobile is also enunciated. In *Chimel,* the Supreme Court disapproved the prior holding in United States v. Rabinowitz, *supra,* that the lawful arrest made therein justified a search extending to all that might be considered in the "possession" or under the "control" of the accused. But in narrowing the scope of the warrantless search of an automobile incident to a lawful arrest, *Chimel* approved the validity of a warrantless search and seizure to prevent destruction of evidence and interpreted *Preston* as supporting this rule, saying:

> "There is ample justification therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.

> "There is no comparable justification, however, for routinely searching any room other than that in which an arrest occurs—or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself. Such searches, in the absence of well-recognized exceptions, may be made only under the authority of a search warrant. The 'adherence to judicial processes' mandated by the Fourth Amendment requires no less.

"This is the principle that underlay our decision in Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777. In that case three men had been arrested in a parked car, which had later been towed to a garage and searched by police. We held the search to have been unlawful under the Fourth Amendment, despite the contention that it had been incidental to a valid arrest. Our reasoning was straightforward:

> 'The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, *as well as by the need to prevent the destruction of evidence of the crime*—things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control. But these justifications are absent where a search is remote in time or place from the arrest.' Id., at 367, 84 S.Ct., at 883 [11 L.Ed.2d at 780]." (Emphasis added.)

■ Defendant contends that there was no necessity under the circumstances for the agents to have undertaken an immediate search of the trunk of the automobile. (A broken package of goods not identified as stolen from an interstate shipment was in plain view on the front seat and under the defendant's immediate control when defendant was arrested.) But the evidence entered in the hearing on the motion to suppress shows that the principles and exceptions of *Chimel* and *Preston* set out above had particular application in this case and that the search was indeed necessary.[1] The agents had probable cause as eyewitnesses to believe stolen goods were in the trunk of defendant's automobile. As noted, above, the defendant was ar-

---

1. The search of the automobile trunk and seizure of the package therein were clearly reasonable, independent of the arrest.

Cf. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419.

rested near the Broadway Bridge, in the vicinity of Sixth and Broadway, at 8 o'clock, or thereabouts, on a Saturday night in February. The evidence showed that the agents could not have safely left the car unattended in such a neighborhood to have it later towed in to await a search under warrant. The neighborhood was a blighted, old, decaying urban area, inhabited by many persons who would be apt to attempt unlawfully to take the car or its contents. The evidence also showed that there was no substantial opportunity quickly to secure the assistance of a member of the Kansas City police to stand guard while the arrangements were made by the two arresting agents to have the car towed in by city police because the Kansas City Police radio is not on the same frequency as the FBI radio. Further, no extra FBI agents who could be summoned for guard duty were on duty on this particular Saturday night. The two arresting agents reasonably followed their customary procedure jointly to take an arrested prisoner into custody for booking and detention. This procedure was reasonably justified in this instance, further, because of defendant's apparent physical capacities for escape and violence. Defendant is a large, powerful man.

Defendant's final factual contention that the arrest was made after the search is without merit. The agent's log book and testimony clearly establishes that the arrest preceded the search.

For the foregoing reasons, it is concluded that the government has clearly proved that the arrest of defendant and the search of his automobile trunk were both lawful. For these reasons the motion to suppress the evidence taken as a result thereof must be denied. See Gullett v. United States (C.A. 8) 387 F.2d 307.

It is therefore

Ordered that defendant's motion to suppress be, and it is hereby, denied.