## 20029

The STATE, Respondent, v. Chris Lamar McTIER, Appellant

(215 S. E. (2d) 908)

*O. Torbitt Ivey, Jr., Esq.,* of Augusta, Ga., *for Appellant,*

*Messrs. Daniel R. McLeod, Atty. Gen., C. Tolbert Goolsby, Jr., Dep. Atty. Gen., Joseph R. Barker, Asst. Atty. Gen., and Brian P. Gibbs, Staff Atty., of Columbia, and C. LaVaun Fox, Sol., and Kelly F. Zier, Asst. Sol., of Aiken, for Respondent,*

June 5, 1975.

LITTLEJOHN, Justice.

The defendant, Chris Lamar McTier, was charged in two separate indictments with violating the statutes of this State proscribing the possession of controlled substances or drugs. The first indictment charged him in a single count with a violation of Code § 56-1313 in that he did "knowingly and intentionally possess 1 capsule Dalmane, two ampules of valium, without a valid prescription."

The second indictment charged him with violation of § 32-1510.49(b)(2) in four separate counts: count one charged that he did "knowingly and intentionally possess" in varying amounts, parest, amytal, nembutal, seconal, quaalude, seconal sodium, dexedrine, dexamyl, controlled substances under Schedule II of the statute, such not having been obtained in accordance with law; count two charged that he did "knowingly and intentionally possess" in varying amounts, emperin with codeine, doriden, tuinal, controlled substances under Schedule III of the statute, such substances not having been obtained in accordance with law; count three charged that the defendant did "knowingly and intentionally possess" 6.65 grams of marihuana, a controlled substance under Schedule I(d) of the statute, such substance not having been obtained in accordance with law; count four charged that he did "knowingly and intentionally possess" two tablets of miltown, a controlled substance under Schedule IV of the statute, such substance not having been obtained in accordance with law.

He was convicted on both indictments and all counts, and received five separate sentences for a total of 39 months in prison.

He has appealed, placing in issue the legality of the indictments, the trial and conviction, as will be more specifically set out hereafter. A recitation of the facts surrounding

his apprehension, arrest and questioning is necessary for an understanding of the issues now before this Court.

Pursuant to an anonymous phone call, about 10 o'clock p. m. on February 24, 1974, police officer C. S. Goforth, of North Augusta, and Lt. Grant, a fireman, went to the parking lot of Hardee's drive-in restaurant. They found the defendant in a drunken condition, attempting to start his automobile. They arrested him for being intoxicated in public, searched him, and carried him to the police station where an inventory of his personal possessions was made. They found a container of valium. They returned to Hardee's where the defendant's automobile had been left. No search warrant was obtained.

The automobile had been taken to a garage about 100 yards from the drive-in restaurant. Upon searching the automobile they found on the seat, floorboard, and in the trash basket the drugs referred to in the indictments hereinabove, except the valium which had been taken from his person.

Defendant slept until 11:30 next morning. At that time he appeared to be coherent and was questioned by Sergeant Nichols after he was given *Miranda* warnings. At first he denied possession of any drugs other than the bottle of valium, but later made an oral confession (which was admitted in evidence), telling the sergeant that he knew the drugs were in his car and that he intended to use some of them personally and to sell the remainder.

In this appeal the defendant alleges that the trial judge erred in nine particulars:

"(1) In refusing to quash the single-count indictment charging a violation of § 56-1313;

"(2) In refusing to quash or recast the four-count indictment charging four violations of § 32-1510.49(b);

"(3) In refusing to suppress the evidence (drugs) found in appellant's car;

"(4) In refusing to grant a continuance due to surprise;

"(5) In misstating the testimony of the State's expert witness and in ruling as a matter of law that valium and dalmane came within the terminology of § 56-1313;

"(6) In allowing into evidence the oral confession of appellant;

"(7) In charging the jury in a manner that shifted the burden of proof to appellant;

"(8) In refusing to direct a verdict of acquittal on the indictment charging a violation of § 56-1313;

"(9) In refusing to direct a verdict of acquittal on three of the four counts charging a violation of § 32-1510-49(b)."

The defendant submits that § 56-1313, under which the first indictment was brought, does not apply to him because that section is included in a chapter of the code entitled "Pharmacists." He submits that the interpretation and applicability of the statute is to be determined by the intent of the legislature, and urges that the section applies to pharmacists but not to other individuals. We think the suggested interpretation is erroneous. Section 56-1313 reads in relevant part as follows:

"Certain drugs to be sold on prescriptions—It shall be unlawful *for any person* to sell, give away, barter, exchange, distribute or possess in the State, except on a prescription of a duly licensed physician, medical or osteopathic, dentist or veterinarian:" (emphasis added)

We think that the statute applies to all persons, and not merely to pharmacists, and hold that the judge properly refused to quash the first indictment.

At the beginning of the trial counsel for the defendant also moved to quash the second or four-count indictment. It was his contention that the indictment should be dismissed, or at least recast by grouping counts 1, 2, and 4 into a single count. The motion was denied. The South Carolina Narcotic Drug Act classifies proscribed drugs by schedules ranging from I to V—the more dangerous the item the

lower the numeral and the greater the possible sentence to be imposed upon conviction. For example, one distributing or possessing with intent to distribute under Schedule I may be sentenced to as much as 15 years, while one convicted of distributing, or possessing with intent to distribute, under Schedule V may be sentenced for a term of not more than one year. The penalties are set out separately as relate to the various schedules.

However, in dealing with simple possession the penalty section merely provides as follows:

"It shall be unlawful for any person knowingly or intentionally to possess a controlled substance unless the substance was obtained directly from, or pursuant to a valid prescription or order of, a practitioner while acting in the course of his professional practice, or except as otherwise authorized by this act.

"Any person who violates this act with respect to:

.   .   .   .   .

"(2) any other controlled substance classified in Schedules I-V shall be deemed guilty of a misdemeanor and, upon conviction, shall be imprisoned for not more than six months or fined not more than one thousand dollars, or both."

The gravamen of defendant's argument is that if counts 1, 2 and 4 were consolidated into one count, the penalty could be only six months, whereas the judge, treating the violations as three separate counts, imposed three consecutive six-month sentences.

We are of the opinion that the schedules are mutually exclusive. If in these counts the defendant had been charged with possession with intent to distribute, the penalty provided in each schedule would have been different, and it would hardly be argued that the offenses were not separate. The fact that the penalty as relates to simple possession, as charged here, is not repeated incident to each schedule does not alter the fact that the offenses are

different, each differing according to the degree of danger assigned to the particular drug in the various schedules. We find no error in refusal of the judge to dismiss the indictment or recast the same.

Appellant submits that the trial judge erred in refusing to suppress the evidence procured by the officers from the automobile (exhibits 2 through 13). He argues that the officers should have procured a search warrant, and argues that the holding in *Preston v. United States,* 376 U. S. 364, 84 S. Ct. 881, 11 L. Ed. (2d) 777 (1964), does not allow warrantless searches remote in time or place from the arrest.

The search of the appellant at the time of the arrest was, of course, legal and proper. The procurement of his personal effects upon his arrival at the police station was, likewise, legal and proper. Had the police officers found the ampule of valium upon their search at the time and place of the arrest, it would hardly be argued that a search of the automobile would have been improper. When the appellant turned the ampule over to police officer Goforth, the officer say that it was labeled "Valium" and believed it to be a proscribed drug, but could not at that time be positive about it.

In this appeal the respondent endeavors to justify the seizure of the drugs from the automobile on the ground that the police officers had a right, if not a duty, to inventory the automobile in the interest of protecting the appellant's property. The argument has much appeal. We are of the opinion, however, that the ground upon which Judge Ness, the trial judge, refused to suppress the evidence is more sound. He said:

"I hold that they could have arrested him, that this was a custodial arrest when they arrested the man and took him to the station; that when they saw this ampule of valium that they had sufficient probable cause then to go back and search his car without a warrant; that only five minutes had elapsed from the time they arrested him until the search of

the car took place, and that it was a proper search of the vehicle. . . ."

Under the narrow circumstances of this case, we conclude that the Fourth Amendment to the Constitution of the United States and Article I, Section XVI of the South Carolina Constitution should not be extended to invalidate the search and seizure. Our holding is consistent with *United States v. Edwards,* 415 U. S. 800, 94 S. Ct. 1234, 39 L. Ed. (2d) 771 (1974); *United States v. Robinson,* 414 U. S. 218, 94 S. Ct. 467, 38 L. Ed. (2d) 427 (1973), and *Cady v. Dombrowski,* 413 U. S. 433, 93 S. Ct. 2523, 37 L. Ed. (2d) 706 (1973).

During the trial the State's drug-expert witness gave what may be interpreted as conflicting testimony concerning the applicability of § 56-1313 to the drugs valium and dalmane. On direct examination he testified that valium and dalmane came within the terminology of § 56-1313, and then on cross-examination he stated that to his knowledge neither valium nor dalmane came within the provisions of that section. The State closed its case, the time being at the end of the court day. Next morning the State was allowed to reopen and recall this expert witness. He was asked to clarify his testimony, and testified that valium and dalmane were controlled substances and would come within the provisions of § 56-1313.

Defendant's counsel moved for a continuance (actually a recess), contending that he was surprised by this additional testimony. He sought to procure an expert witness, apparently to testify contrary to the State's expert. The motion was denied. In such matters the trial judge is vested with a discretion. See *State v. Durden,* S. C., 212 S. W. (2d) 587 (filed March 13, 1975). We find no abuse of discretion.

Counsel next contends that the trial judge did "abuse his discretion in misstating the testimony of the State's expert witness and ruling as a matter of law

that valium and dalmane came within the terminology of Section 56-1313." The statement referred to by counsel was made by the judge in the absence of the jury and could in no event have affected the outcome of the trial and accordingly, even if erroneous, was not prejudicial such as to warrant a new trial.

Appellant contends that the judge erred in allowing into evidence over objection the testimony of Sergeant Nichols concerning an oral confession. It would appear that the defendant was arrested about 10 o'clock at night. He slept throughout the night and was still comatose at 7:30 the next morning. At 11:30 of the same morning, which would be more than 13 hours after he was arrested, Sergeant Nichols, after giving him his *Miranda* warnings, took a statement. The evidence is clearly susceptible of the inference that he understood and waived his constitutional rights at the time he gave the statement, wherein he admitted that he had the drugs in the automobile, for the purpose of using some of them and selling others. We find no error in admission of the oral confession.

After commencing deliberation, the jury returned for a recharge on the law of possession. The judge complied with the request of the jury, touching upon the law of possession and the burden of proof. At the conclusion of which charge he inquired of the State and of defense counsel whether they took exception to the charge. Defense counsel responded, "No, sir." Counsel would now argue that the charge of the judge was erroneous and that a new trial should be granted. This Court has in many cases held that when counsel is given an opportunity in the trial to object to a charge and declines to do so, the point may not be raised for the first time on appeal. Accordingly, the exception is overruled.

Counsel also alleges error on the part of the trial judge in refusing to grant a directed verdict as to the first, one-count, indictment and as to the second,

four-count, indictment. From reference to the facts hereinabove recited, it is abundantly clear that the evidence warranted the submission of the issues to the jury and, accordingly, we hold that there was no error in refusing to grant the motions for directed verdicts.

Affirmed.

Moss, C. J., and Lewis, J., concur.

Bussey, J., dissents.

Ness, J., disqualified.

Bussey, Justice (dissenting) :

Not being convinced that the warrantless search in this case can be justified as being within any recognized, established or delineated exception to the warrant requirement. I most respectfully dissent.

If the time elapsed between the arrest and the search of the automobile be relevant, it is true that at one point in his testimony the officer estimated the elapsed time to be only five minutes. Other testimony on his part, however, as well as the testimony of other witnesses shows clearly that a considerably longer period of time elapsed. The officer proceeded approximately a quarter of a mile to the station after the arrest, stopping for at least one traffic light. He booked the defendant, observed his personal effects, etc., called his superior officer at home and after some conversation was directed by his superior officer to return to the defendant's car and thoroughly search the same. He then returned to Hardee's but found that the car, which was inoperable, had been towed to a nearby garage where the officer then went and proceeded to carry out the search directed by his superior.